UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CRIMINAL ACTION NO. 1:13CR-00027-JHM

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.

REYNALDO HERNANDEZ
a/k/a FAUSTINO PALACIOUS                                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Reynaldo Hernandez's Motion to Suppress [DN 29]. The Defendant filed a post-hearing brief in support of his motion. The United States failed to file a timely response. Thus, this matter is ripe for decision.

I.  BACKGROUND

This case arises out of the arrest of Reynaldo Hernandez following a controlled delivery of two FedEx packages. Law enforcement officers from the Russell Springs Police Department and the U.S. Drug Enforcement Administration conducted the joint operation after FedEx contacted the DEA and informed them that FedEx suspected two packages scheduled to be delivered to 2075 Lakeway Drive, Russell Springs, Kentucky contained marijuana.

On March 28, 2013, members of the joint operation established surveillance around 2075 Lakeway Drive in order to observe the delivery of the packages. Posing as a FedEx employee, Officer Chastity Shirley of the Russell Springs Police Department delivered the parcels addressed to Javier Rios to Defendant's residence. A female, identified later as Martha Barrios, answered the door. When Officer Shirley asked for Javier Rios, the female indicated that he was in the shower. Defendant then arrived at the door and said that Javier Rios was not present in the

house at that time. Officer Shirley then asked the Defendant if he would sign for the packages and he said, "No problem."

The officers observed Defendant take the packages into his house, and then Defendant and Martha Barrios carried the packages to a shed located on an adjacent property. After securing the packages on the adjacent property, law enforcement officers approached Defendant's house in order to gain consent to search his property. Initially, Defendant consented to a search, but he then changed his mind which prompted Officer Shirley to draft an affidavit at the County Attorney's Office for the purposes of obtaining a search warrant. Officer Shirley submitted the following affidavit for the search of 2075 Lakeway Drive:

> Affiant was contacted by DEA Special Agent Greg Bunch who stated FedEx contacted the DEA London Resident Office concerning two packages they (FedEx) had located that contained marijuana. SA Bunch responded to the London, Kentucky FedEx packaging facility and confirmed that the two packages contained marijuana. SA Bunch further noticed the packages were to be delivered to 2075 Lakeway Drive, Russell Springs, KY 42642. This address also known as 2075 Highway 3017, Russell Springs, KY. SA Bunch then took possession of the packages and contacted Russell Springs Police Chief Joe Irvin and RSPD Officer Chasity Shirley. SA Bunch notified Chief Irvin and Officer Shirley that parcels were scheduled to be delivered on March 28, 2013. Chief Irvin then instructed SA Bunch that his department would make a Controlled Delivery of the parcels. SA Bunch then transported the parcels to Russell County Kentucky and released custody of the parcels to Officer Shirley.
> On March 28, 2013 at approximately 1442 hours, affiant delivered the parcels to 2075 Lakeway Drive in Russell Springs, Kentucky, also known as 2075 Highway 3017, Russell Springs, Kentucky. During the delivery at said residence, a female hispanic stated "no english" and affiant asked for Javier and female hispanic responded, "shower" and then a hispanic male at residence was asked if Javier was there and said male said "no," then affiant asked if this was 2075 Lakeway Drive and the male said "yes." Affiant then asked the male if he wanted to sign for the packages. Male said "no problem". Hispanic male signed for the parcels and signed his name Adan Nunez and said hispanic male pick up parcels and took them in the residence.

(Gov't Ex. 2, Search Warrant). Based on the affidavit, a search warrant was granted.

## II. DISCUSSION

Defendant argues that all evidence seized in the subsequent search of Defendant's home should be suppressed as fruits from an illegal search. First, Defendant contends that police made false statements in order to obtain a warrant to search his home. As result of these false statements, Defendant argues that the police lacked sufficient probable cause to obtain the search warrant. Second, Defendant argues that police violated his Fourth Amendment rights by observing him in a place where he had a reasonable expectation of privacy.

### A. Franks Hearing

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "When probable cause is required, it is an obvious assumption that there will be a truthful showing of probable cause." United States v. Witherspoon, 2010 WL 724663, *2 (W.D. Ky. Feb. 25, 2010) (citing Franks v. Delaware, 438 U.S. 154 (1978)). In challenging the veracity of statements contained in the affidavit, the Defendant must prove by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155–56. "If this is established by the defendant, then the false material must be set aside in determining whether the remaining content is sufficient to establish probable cause." Witherspoon, 2010 WL 724663, *2 (citing Franks, 438 U.S. at 156.). If the remaining material is insufficient to establish probable cause, the search warrant must be voided and the evidence obtained as a result of the search excluded as if probable cause was lacking on the face of the warrant." Id.

On November 25, 2013, the Court held a hearing to determine the truthfulness of the statements made in the affidavit used to obtain a search warrant. Defendant fails to identify any

factual statement made in the affidavit that would be considered a false statement for the purposes of Franks. Defendant argues that the affidavit is deficient in connecting Javier Rios with Defendant. However, as apparent from the language of the affidavit, there are no statements to indicate that police officers attempted to mislead a court into believing the person who signed for the package, the Defendant, and the name on the label, Javier Rios, were necessarily the same individual. Defendant's contention appears to be more suited for an argument against probable cause. Based on the Franks hearing, the Court concludes that there were no false statements that need to be removed from the affidavit in order reevaluate for the purposes of probable cause.

### B. Probable Cause

In determining whether an affidavit establishes probable cause to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In order to establish probable cause to search, a warrant request "must state a nexus between the place to be searched and the evidence sought." United States v. Bethal, 245 Fed. Appx. 460, 464 (6th Cir. 2007) (citations omitted) (internal quotation marks omitted). "The belief that the items sought will be found at the location to be searched must be 'supported by less than *prima facie* proof but more than mere suspicion.'" Id. (quoting United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)). The Court reviews a warrant issued by a judge with "great deference" to that judge's determination as to probable cause. Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

Defendant believes that the search warrant lacked probable cause, and therefore, all evidence obtained pursuant to the warrant should be suppressed. In this case, law enforcement

officers observed Defendant sign for and take possession of packages containing marijuana. These facts support the conclusion that there was a fair probability that a search of Defendant's premises would lead to a discovery of evidence related to the use, distribution, or sale of marijuana. The details of the affidavit sufficiently support a finding of probable cause.

### C. Surveillance by Law Enforcement

The Fourth Amendment protects an individual from unreasonable searches and seizures. Any evidence that stems from an unreasonable search or seizure must be suppressed. Wong Sun v. United States, 371 U.S. 471, 488 (1963). "Since the Supreme Court's decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the touchstone of Fourth Amendment analysis 'has been the question whether a person has a constitutionally protected reasonable expectation of privacy.'" U.S. v. Rapanos, 115 F.3d 367, 374 (6th Cir. 1997) (quoting Oliver v. United States, 466 U.S. 170, 176 (1984)).

Defendant argues that law enforcement violated the Defendant's reasonable expectation of privacy by conducting surveillance of his residence without a warrant. The Supreme Court has held that because no legitimate expectation of privacy exists in open fields, the Government's intrusion into open fields without a search warrant is not an unreasonable search prohibited by the Fourth Amendment. Oliver, 466 U.S. 170. Moreover, "law enforcement officers are entitled to observe things in plain sight from publicly accessible areas." United States v. Anderson-Bagshaw, 509 F. App'x 396, 404 (6th Cir. 2012) cert. denied, 133 S. Ct. 2012, 185 L. Ed. 2d 877 (U.S. 2013); see also California v. Ciracolo, 476 U.S. 207, 213 (1986) ("The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares."). There is no evidence in this case that law enforcement officers observed Defendant from any other location than what would be

accessible to an ordinary citizen. In fact, as explained by Chief Irvin at the <u>Franks</u> hearing, none of the other law enforcement officers involved in the operation, other than Officer Shirley, even came close to entering the property while conducting surveillance. Therefore, there is no reason for the Court to conclude that police invaded an area where Defendant would have a reasonable expectation of privacy.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress [DN 29] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 11, 2014